Ellis C. IRWIN

v.

UNITED STATES of America.

Civ. A. No. 74-2735.

United States District Court,
E. D. Louisiana.

May 22, 1975.

———◆———

Harry Nowalsky, Lambert, Nowalsky & Lambert, New Orleans, La., for plaintiff.

John F. Murray, Dept. of Justice, Tax Div., Washington, D. C., Fred W. Schwendimann, III, Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

## ORDER

R. BLAKE WEST, District Judge.

This is an action brought under the Internal Revenue Laws of the United States for refund of taxes *erroneously* and *illegally* assessed and paid under protest to the United States. Plaintiff has moved for a summary judgment.

The issue involved in this complaint simply stated is:

The plaintiff, Ellis C. Irwin, contends that he has been a practicing attorney for over 35 years; that during the years 1964 and 1965 he purchased stock in Hygrade Investments, Inc., which corporation was placed in liquidation in December, 1966 and is now defunct; that the sole purpose of his original and later acquisitions of said stock was *not* for investment purposes but solely to give him a sufficient interest to become the Attorney and Notary Public for the corporation and would thus extensively promote his legal and notarial practice through fees derived from Hygrade Investments, Inc. and its borrowers—from relatives and through collection services, both as attorney at law and notary public.

Hygrade Investments, Inc. went into liquidation in 1966 and is now defunct, and the plaintiff in preparing his income tax return for the year 1966 reported the cost of said stock as an ordinary business expense loss, as defined by Section 162(a) of the Internal Revenue Code.

The Internal Revenue Agent rejected plaintiff's contentions and classified the worthless stock of Hygrade Investments, Inc. as a capital loss.

As a result of the Revenue Agent's ruling, plaintiff paid the additional assessments under protest and subsequently brought this action for a refund.

Plaintiff correctly states in his memorandum of law that property which is normally held as a capital asset may in some circumstances be treated as an ordinary or noncapital asset for tax purposes. *Corn Products Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955). However, in order to properly resolve the question of whether property is being held as a capital asset, one must pay particular attention to *all* relevant facts and cricumstances. Indeed, in *Schlumberger Technology Corp. v. United States*, 443 F.2d 1115

(C.A.5, 1971), the Court of Appeals for the Fifth Circuit expressly stated:

" * * * if securities are purchased by a taxpayer as an integral and necessary act in the conduct of his business, and continue to be so held until the time of their sale, any loss incurred as a result thereof may be fully deducted from gross income as a business expense or ordinary loss. If, on the other hand, an investment purpose be found to have motivated the purchase or holding of the securities, any loss realized upon their ultimate disposition must be treated in accord with the capital asset provisions of the Code.

* * * * * *

The fact that securities are "property", in the broad sense of the term, is not conclusive.

* * * * * *

In determining whether the transaction involved falls within the "ordinary" or "investment" categories, the Court must consider

* * * * * *

the circumstances of the transaction (its factual background, the necessities of the particular business involved at the particular time involved, and the intention of the taxpayer, both at the time the securities were originally purchased and at the time they were disposed of) * * * "

See also *Booth Newspapers, Inc. v. United States,* 303 F.2d 916, 157 Ct.Cl. 886 (1962). The Fifth Circuit recently reaffirmed the *Schlumberger* rule in *Midland Distributors, Inc. v. United States,* 481 F.2d 730 (C.A.5, 1973). Accordingly, under the rule of law established by the Fifth Circuit, and after an extensive review of all uncontroverted facts and circumstances, it is clear that the plaintiff had no investment purposes in mind when he purchased the Hygrade stock.[1]

---

[1] See answers to interrogatories attached hereto as Appendix I, particularly the answer to Interrogatory No. 2, wherein plaintiff states unequivocally that had he not purchased the

Therefore, it is hereby ordered that movant prepare and submit to the Court a judgment in his favor and against the defendant, the United States of America, thirty days from this date.

## APPENDIX I

## ANSWER TO INTERROGATORIES PROPOUNDED BY DEFENDANT

Now into Court comes Ellis C. Irwin, Plaintiff in this cause and in answer to the interrogatories propounded to him (by mail Feb. 14, 1975) states:

### INTERROGATORY NO. 1

State your name, your address, and your present occupation.

### ANSWER

My name is Ellis C. Irwin, residing at 2508 Pine Street, New Orleans, Louisiana, and I am an Attorney and Notary Public, with offices at Suite 801 Baronne Building, New Orleans, Louisiana.

### INTERROGATORY NO. 2

In paragraph No. 9 of your complaint, you state:

9. The ground for recovery raised by Plaintiff was that Plaintiff, a practicing attorney for over thirty-five (35) years, alleges that the cost of stock in Hygrade Investments, Inc., (now defunct), was an ordinary loss; and was acquired so that said stock would give him a sufficient interest to become the attorney and notary for the corporation, and would give him a sufficient interest to become the attorney and notary for the corporation, and would extensively promote Plaintiff's legal practice, through fees to be earned from the Hygrade Investment, Inc. and its borrowers, from retainers and through collection services, both as at-

---

stock he would not have acquired the legal and notarial work; that is to say, the cost of the stock was an ordinary expense of his doing business.

torney and notary public, and therefore, said acquired stock was *not a capital asset*, but was an ordinary loss.

State with particularity all facts which tend to support your contention that you are entitled to an ordinary loss under Section 165 of the Internal Revenue Code of 1954 (28 U.S.C.) attributable to the worthlessness of your stock in Hygrade Investments, Inc., and state the names and last known addresses of all persons having knowledge of those facts.

ANSWER

In order to understand my reasoning, it is first necessary to have only a slight knowledge of the earning possibilities enuring to an attorney and/or notary for a finance company and/or person or firm engaged in the finance business.

The following further comments are respectfully submitted for consideration regarding the lucrative possibilities of being an attorney and/or notary for persons or corporations engaged in the finance business:

When loans are placed in the hand of an attorney for collection, the note involved in the loan usually carries a 20% or 25% collection fee. However, unless the note is secured, collection can be difficult, particularly when it is on a single signature loan.

When real estate is involved as a security for the loan, this requires an examination of title and in many instances, a succession proceeding may be necessary, in order to clear the title, the fees for which are very satisfying.

When I refer to the legal and notarial work having possibilities of being lucrative, I am making this statement from my own experience, having in the past, served in these capacities and enjoying the very satisfying financial returns, although the returns from Hygrade Investments, Inc., during its short existence, did not meet these standards.

When I first became associated with the firm of Irwin, Seelig and Nelkin, we represented the Excel Finance Company, (a similar enterprise to Hygrade Investments, Inc.), for which we were paid a monthly retainer of $1200.00, in addition to the amounts received when real estate, mortgages or successions were involved. However, this retainer was lost when we started to represent Hygrade Investments, Inc. There are many attorneys in New Orleans who are fortunate enough to represent finance companies, and I am certain that they will attest to the fact that they would prefer being an attorney or notary to being a stockholder.

Next, permit me to refer to my affidavit, attached to the Motion for Summary Judgment from which I quote,

"That when the Hygrade Investments, Inc. was getting organized, affiant agreed to purchase stock in said corporation, individually, but not as a member of the law firm. Having previously been an attorney for finance companies and knowing the lucrative fee and earning potential of this business, special consideration was given to the possibility of procuring the Hygrade Investments, Inc. law business, which it fortunately obtained;

That at the beginning, affiant was only allotted 135.70 shares. Fortunately, an amendment to the Charter on March 4, 1965, increased the capital stock to $100,000.00, with a par value of $10.00 per share, which increased the stockholding of David Gertler (the largest single stockholder prior thereto, with 236 shares) to 2360 shares, and affiant, Ellis C. Irwin to 1357 shares and David Seelig with 1,091½ shares. That shortly thereafter, there appeared some dissension in the law firm, and there were indications that same was to be dissolved, and your affiant, realizing the possibility of acquiring said law business for himself, if the firm was to be dissolved, endeavored to increase his stock holdings;

That on May 25, 1965, affiant, Ellis C. Irwin, was able to purchase 1,091.5

shares of stock of David Seelig (who had withdrawn from the law firm), which was dissolved March 1, 1965, which then increased affiant's holdings to 2448.5 shares and thereby he became the largest single stockholder."

For further reference, I attach hereto a copy of this affidavit. I stated before and repeat again with *emphasis* that my original reason for purchasing stock in Hygrade Investments, Inc. was to acquire the law and notarial business of that corporation, and by affidavits, attached to my Motion for Summary Judgment, it is apparent that my law partners at that time, Mr. *Nelkin* and Mr. *Seelig,* also had the same thought in mind. They, as well as I, were attorneys with previous experience in handling such business for finance companies. This idea was always with me from my first purchase of stock. In order to bolster my position, I subsequently acquired the stock of David Seelig, thus giving me the status of being the largest individual stock holder.

It was not long after I had become a member of the law firm of Irwin, Seelig and Nelkin that it became apparent, because of the dissension between the partners, that a dissolution of this firm was eminent. Mr. Seelig was the first to withdraw, and when I had the opportunity to purchase his stock, I did so, even though the price was then inflated. As a result of this purchase I became the owner of 2448½ shares of stock of Hygrade Investments, Inc., which placed me in the position of being the largest individual stockholder, and I attach hereto copies of the stock certificates, evidencing same, the original of which I hold in my file, and will surrender upon request.

I do not believe and I am not certain that I discussed my desire to become the attorney and notary for Hygrade Investments, Inc., as this is not a matter one discusses with a law partner (with like

desires), from whom he expects to disassociate.

## INTERROGATORY NO. 3

State whether or not there are documents which tend to support the facts set forth in your answer to interrogatory No. 2, above, and, if so, describe them with particularity and state the names and last known addresses of the persons having custody of them, or in lieu thereof, attach copies of the documents to your answers to these interrogatories.

## ANSWER

I am the holder of stock certificate No. 4 for 1357 shares of Hygrade Investments, Inc., in the name of Ellis C. Irwin and certificate No. 5 for 1091½ shares of Hygrade Investments, Inc., in the name of David H. Seelig, duly endorsed and transferred, copies of which are attached.

## INTERROGATORY No. 4

State when Hygrade Investments, Inc., was organized, and state when it ceased to exist.

## ANSWER

Hygrade Investments, Inc. was incorporated July 26, 1962, by act before Joseph Nelkin, Notary Public, recorded in the Parish of Orleans, in Mortgage Office Book 2013, Folio 428. It remained dormant until April 9, 1964, when a state permit to operate as a small loan business was procured. It ceased to exist December 14, 1966, when it was placed in Judicial Liquidation.

## INTERROGATORY NO. 5

State the names and last known addresses of all persons who were stockholders of Hygrade Investments, Inc., during the period covered by your answer to interrogatory No. 4, above. Additionally, state the number of shares of stock in Hygrade Investments, Inc., held by each person named in your answer to this interrogatory.

ANSWER

The original incorporators were:

Corinne Werla                2000 shares
Henrietta Boulet             1500 shares
Carol Roselli                1500 shares.
who were office employees of the law firm of Gertler, Hart and Duran.

Their present addresses are unknown.

When the corporation was activated in April, 1964, the following stockholders were listed:

David Gertler                236 shares
438 Amethyst St.
New Orleans, Louisiana 70124

Gerald Hellman               210 shares
4832 York St.
Metairie, Louisiana 70001

Dr. Morris Laufer            200 shares
1350 River Reach Drive, Apt. 416
Fort Lauderdale, Florida   33315

Ellis C. Irwin               135.70 shares
2508 Pine Street, Apt. F
New Orleans, Louisiana   70125

Joseph Nelkin                109.15 shares
311 Mouton Street
New Orleans, Louisiana   70124

David Seelig                 109.15 shares
Maritime Building
New Orleans, Louisiana   70130

An amendment to the charter increased the stockholding as follows:

David Gertler            2360 shares
Gerald Hellman           2100 shares
Dr. Morris Laufer        2000 shares
Ellis C. Irwin           1357 shares
Joseph Nelkin            1091.5 shares
David Sellig             1091.5 shares

## INTERROGATORY NO. 6

State the names and last known addresses of the persons having custody of the following records of Hygrade Investments, Inc.:

(a) The certificates of incorporation;

(b) the stock books;

(c) the minutes of board of directors meetings;

(d) the minutes of stockholders meetings;

(e) the books of account;

(f) the correspondence files;

(g) the corporate bylaws; and

(h) the balance sheets and financial statements of the corporation for the period covered by your answer to interrogatory No. 4, above.

ANSWER

To the best of my knowledge, the above records were surrendered to Mr. Benjamin Loup, Liquidator, an attorney with offices in the Hibernia Bank Building, New Orleans, Louisiana 70112.

## INTERROGATORY NO. 7

State whether or not you were an officer or director of Hygrade Investments, Inc. during the period of time covered by your answer to interrogatory No. 4, above. If so, state when you were an officer or a director of the corporation.

ANSWER

I was a director from April, 1964, when the corporation was activated until July, 1966, shortly prior to the liquidation proceedings, when I became *President.*

## INTERROGATORY NO. 8

State whether or not you held stock in other corporations during the period of time covered by your answer to interrogatory No. 4, above. If so, state the names of the corporations and the number of shares of stock you held in each.

ANSWER

Fair Grounds—Original purchase—1 share preferred and 3 shares common

This was later increased by dividends and also stock splits.

Bank of New Orleans—Original purchase—10 shares

This was later increased by dividends and also stock splits.

I owned no speculative stock, whatsoever, and have never been a speculative investor in stocks or bonds.

## INTERROGATORY NO. 9

State whether or not you had losses attributable to worthless stock, other than the loss which is the subject of this civil action, during the period of time covered by your answer to interrogatory No. 4, above. If so, state the name of the corporation, the number of shares held, the amount of the loss, and state whether you claimed a capital or an ordinary loss for income tax purposes.

## ANSWER

I do not recall any losses attributable to worthless stock, other than Hygrade Investments, Inc.

## INTERROGATORY NO. 10

State, on an annual basis, the gross amount of legal fees you earned during the period of time covered by your answer to interrogratory No. 4, above.

## ANSWER

My method of bookkeeping does not separate legal and notarial fees. It is all included under the heading of fees, the gross amounts of which are:

|  |  | PARTNERSHIP | | PERSONAL |
|  |  | Gross | Net | Gross |
| 1963 |  |  |  | 15,834.00 |
| 1964 | (24%) | 83,243.67 | 26,868.75 = 6,404.82 | 13,941.00 |
| 1965 | (24%) | 49,993.01 | 3,203.12 = 768.72 | 35,009.00 |
| 1966 |  |  |  | 29,350.00 |

## INTERROGATORY NO. 11

State, on an annual basis, the gross amount of notarial and recording fees you received during the period of time covered by your answer to interrogatory No. 4, above.

## ANSWER

Kindly refer to the answer to interrogatory No. 10.

## INTERROGATORY NO. 12

With respect to each year included in the period of time covered by your answer to interrogatory No. 4, above, state:

(a) The gross amount of legal fees which you earned, either directly or indirectly, as a result of your ownership of stock in Hygrade Investments, Inc.; and

(b) the gross amount of notarial and recording fees which you earned, either directly or indirectly, as a result of your ownership of stock in Hygrade Investments, Inc.

## ANSWER

(a) From the records I now have available, it is not possible for me to state the gross amount of legal fees earned by me or my former partnership in Hygrade Investments, Inc.

(b) Please refer to my answer to interrogatory No. 12 a. However, I do not believe that during the short existence of Hygrade Investments, Inc. any considerable fees were earned in excess of, $1,000.00. The firm acted in the legal and notarial capacities, with Mr. Nelkin or Mr. Seelig doing most of the Court work and me doing the notarial work. Unfortunately, the Judicial liquidation of Hygrade Investments, Inc. was brought about too soon and too suddenly for any real lucrative fees to be earned. Had it remained in existence, there was a possibility.

## INTERROGATORY NO. 13

With respect to each individual item comprising the gross amounts set forth

in your answer to interrogatory No. 12 (a), above, state:

(a) The name of the individual or other entity paying the fee;

(b) the amount paid;

(c) the date of payment; and

(d) the nature of the legal services which you performed in order to earn the fee.

## ANSWER

In response to interrogatory No. 13, please refer to answer to interrogatory Nos. 12(a) and 12(b).

## INTERROGATORY NO. 14

With respect to each individual item comprising the gross amounts set forth in your answer to interrogatory No. 12 (b), above, state:

(a) The name of the individual or other entity paying the fee;

(b) the amount paid;

(c) the date of payment; and

(d) the nature of the notarial and recording services which you performed in order to earn the fee.

## ANSWER

In response to interrogatory No. 14, please refer to answer to interrogatory Nos. 12(a) and 12(b).

## INTERROGATORY NO. 15

State whether or not there are documents which tend to support your answers to interrogatories Nos. 12, 13 and 14, above, and, if so, describe them with particularity and state the names and last known addresses of the persons having custody of them or, in lieu thereof, attach copies of the documents to your answers to these interrogatories.

## ANSWER

If there are any documents tending to support the answers to interrogatories Nos. 12(a) and 12(b), 13 and 14, they are not in my possession and I am not positive in whose possession they are, but I would assume that they are or were in the possession of the liquidator. (See answer to interrogatory No. 6.)

## INTERROGATORY NO. 16

List all other corporations that were your clients during the period covered by your answer to interrogatory No. 4, above, and state the number of shares of stock you owned in each.

## ANSWER

There were no corporations that were my clients during the period covered by my answer to interrogatory No. 4, above, in which I owned any stock.

## INTERROGATORY NO. 17

If the plaintiff expects to call at trial one or more expert witnesses, then state:

(a) The name and address of each expert;

(b) the substance of the facts and opinions to which each expert is expected to testify; and

(c) the grounds for each opinion in summary fashion.

## ANSWER

Although I intend to call witnesses, I do not, at this time, expect to call any expert witnesses, except possibly two or three attorneys representing finance companies who would testify to the lucrative possibilities herein referred to. Under date of February 26, 1975, Mr. Fred W. Schwendimann, Attorney, Tax Division, United States Department of Justice and Mr. Gerald J. Gallinghouse, United States Attorney, filed an opposition to plaintiff's Motion for Summary Judgment, to which is attached the defendant's statement of material facts. This affidavit is attached hereto. These documents were filed two days subsequent to defendant's interrogatories to

plaintiff, to which response is herein made:

The Court's attention is respectfully invited to the admission of the facts stated, and particularly the affidavit of Mr. Fred W. Schwendimann, attached thereto, in which affidavit the said Fred W. Schwendimann, in his official capacity, makes statements and admissions which are materially advantageous to respondent, and confirms several of the answers made by respondent in response to the interrogatories propounded, which admissions tend to substantiate the truthfulness and correctness of the answers.

The Court's attention is further respectfully invited to the fact that when the activation of the Hygrade Investments, Inc., as a finance company was first proposed, the financial return from the legal and notarial work loomed quite large; however due to its short existence, this possibility was abruptly and unsatisfactorily ended.

> (s) Ellis C. Irwin
> ELLIS C. IRWIN

Sworn to and subscribed before me this 14th day of March, 1975.

> (s) Harry Nowalsky
> NOTARY PUBLIC

### CERTIFICATE

IT IS HEREBY CERTIFIED that service of the foregoing answer to interrogatories, propounded by the defendant to plaintiff, has this 14th day of March, 1975, been made on opposing counsel by mailing a copy thereof to the following:

Mr. Fred W. Schwendimann, Attorney, Tax Division, Department of Justice, Room 8B37, 1100 Commerce Street, Dallas, Texas, 75202 and Mr. Gerald J. Gallinghouse, United States Attorney, 500 Royal Street, New Orleans, Louisiana 70130.

> (s) Harry Nowalsky
> HARRY NOWALSKY
> Attorney for Plaintiff