EST. OF WOODROW W. WOODHAM, DECEASED, CLAUDIA J. WOODHAM, EXECUTRIX and CLAUDIA J. WOODHAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Woodham v. Commissioner
Docket No. 4573-73.
United States Tax Court
T.C. Memo 1976-184; 1976 Tax Ct. Memo LEXIS 221; 35 T.C.M. (CCH) 805; T.C.M. (RIA) 760184; June 9, 1976, Filed Claudia J. Woodham, pro se. Thomas R. Thomas, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the Federal income tax of Woodrow W. Woodham and Claudia J. Woodham for the calendar year 1966 in the amount of $5,746.21 and an addition to tax under section 6653(a)(1), I.R.C. 1954, [1] in the amount of $287.31. The issues for decision are (1) whether the statute of limitations barred the assessment and collection of the deficiency determined at the time the notice of deficiency was mailed, (2) whether the Woodhams realized taxable gain from the sale or exchange *223 of stock in 1966, and (3) whether respondent properly determined an addition to tax under section 6653(a) for negligence or intentional disregard of rules. FINDINGS OF FACT Woodrow W. and Claudia J. Woodham filed a joint Federal income tax return for the calendar year 1966 with the Director, Internal Revenue Service Center at Chamblee, Georgia. Mr. Woodham died on December 2, 1972. His widow, Claudia J. Woodham, was appointed executrix under his will. Mrs. Woodham's address at the time the petition in this case was filed was Opp, Alabama. Mr. Woodham became employed by Investments International, Inc. (Investments) upon its incorporation in December 1963. During 1966 Mr. Woodham was the district loan manager and a director of Investments. Mr. Woodham was also a shareholder of Investments having acquired in excess of 11,442 shares of stock in the company. When Investments was first incorporated its stock was sold for $1 a share. By early 1965 the stock of Investments was selling for $3 a share. Federated Investments, Inc. (Federated) was incorporated under the laws of the State of Alabama on April 10, 1965. Its principal business purpose was the ownership and management *224 of finance companies making loans to residents of Alabama. In the latter part of 1965 or early part of 1966, the management of Federated decided that Federated should acquire control of Investments. Federated and Investments were two of several finance companies controlled and headed by Rex H. Moore. The acquisition of control of Investments by Federated was accomplished by Federated acquiring outstanding stock of Investments. This stock was acquired in two ways.Some of the officers and directors of Federated and Investments exchanged stock held in Investments for stock of Federated and received two shares of Federated stock for each share of Investments stock relinquished. Other officers and directors, including Mr. Woodham, assigned their shares of stock in Investments to Federated receiving in exchange checks drawn on the corporate account of Federated in the amount of $6 per share of Investments stock. In the latter part of 1966 Mr. Woodham was employed by Federated, retaining his status as a director of Investments. Mr Woodham assigned some of his Investments stock to Federated in return for checks of Federated and acquired some Federated stock for checks drawn on his *225 personal checking account. Mr. Moore expected Mr. Woodham, as an employee of Investments and Federated, to assign some Investments stock to Federated for checks of Federated and to use the proceeds of the checks received for his stock in Investments for the purchase of stock in Federated.[2]
Aside from a sale made to an unrelated third party on February 10, 1966, Mr. Woodham engaged in transactions with respect to the stock he held of Investments on March 14, 1966, May 12, 1966, May 18, 1966 and August 10, 1966. Under date of March 14, 1966, Check No. 415 was drawn on the corporate account of Federated in the amount of $10,800 payable to W. W. Woodham. The Federated check was signed by Federated's president, Rex H. Moore. Federated's Check No. 415 contained the notation on its face: "1800 shares Investments International, Inc." Mr. Woodham assigned to Federated for the $10,800 check, 1800 shares of Investments stock which he had purchased for $3 a share. Under date of May 12, 1966, a check of Federated, *226 No. 540, in the amount of $3,000 was drawn payable to Mr. Woodham. This check contained the notation: "500 shares of Investments International stock at $6.00 per share (Certificate #3109)." This check was endorsed by Mr. Woodham payable to Federated. Under date of May 18, 1966, Federated Check No. 563 in the amount of $53,532 was drawn payable to Mr. Woodham. This check contained on its face the notation: "8922 shares III (Investments] at $6.00." Under date of August 10, 1966, Federated's Check No. 698 in the amount of $1,320 was drawn payable to Mr. Woodham. This check bore the notation: "220 shares Investments International, Inc. stock." Federated's Checks Nos. 540, 563 and 698 were each signed by Rex H. Moore as president of Federated. Federated Checks numbered 415, 563 and 698 were endorsed by Mr. Woodham and deposited in a joint checking account which he maintained with his wife. Mr. Woodham transferred a total of 11,442 shares of Investments stock to Federated in 1966 for a total payment of $68,652. Mr. Woodham's total basis in the 11,442 shares of Investments stock was $26,502. On May 18, 1966, the same day Mr. Woodham received and deposited in his personal checking *227 account a check from Federated in the amount of $53,532, he drew a check to Federated in the amount of $46,500 with the notation on the check: "15,500 shares of Federated at $3.00 per share." The Woodhams timely filed a joint Federal income tax return for 1966, signed March 22, 1967, and reported total income from salaries or wages of $13,963.11, interest income of $41.36, and dividend income of $904.80. The only other income reported was on Schedule D where petitioners reported three sales of stock of Investments. The sales price, date sold and gain reported on the return are as follows: [3] Date Sold
Sales Price
Gain
5/7/66
$3,000
$ 500.00
5/24/66
7,032
1,054.80
2/10/66
5,090
2,290.50
Respondent mailed the notice of deficiency from which the petition in this case was filed to Mr. and Mrs. Woodham on March 23, 1973. The Woodhams had not executed a waiver or any agreement to extend the statute of limitations for the year 1966. In his notice of deficiency, respondent determined *228 that the Woodhams' reported taxable income for 1966 should be increased by $19,946 because $39,892 of long-term capital gain income from the sale of stock of Investments had not been reported in their joint income tax return. In this notice respondent computed the additional capital gain as follows: No. of
Sales
Expense Date
Shares
Price
Cost
of Sale
Included
Omitted
3-1-66
1,800
$10,800
$ 5,400
$ 5,400
3-14-66
500
3,000
2,500
$ 500.00
5-24-66
1,172
7,032
5,274
$ 703.20
1,054.80
5-31-66
7,750
46,500
12,668
33,832
8-30-66
220
1,320
660
660
Total
11,442
$68,652
$26,502
$703.20
$1,554.80
$39,892
OPINION Petitioner at the trial orally amended the petition to allege that any assessment of tax for the year 1966 was barred by the statute of limitations at the date of the mailing of the notice of deficiency. [4] The Woodhams' return for 1966 was timely filed. Since no agreement to extend the statute of limitations was executed by the Woodhams, petitioner contends that the period provided by the statute for assessment or collection of a deficiency for the year 1966 expired April 15, 1970, [5] prior *229 to the mailing of the notice of deficiency on March 23, 1973. *230 Respondent contends that since the notice of deficiency was mailed within 6 years after the filing of the return, the period for assessment and collection of tax had not expired prior to its mailing because the Woodhams omitted from gross income an amount in excess of 25 percent of the gross income stated in the return.Section 6501(e)(1)(A). [6] Respondent has the burden of proving that the Woodhams omitted from their reported gross income an amount properly included therein in excess of 25 percent of the gross income reported on the return. Elizabeth H. Bardwell,38 T.C. 84, 92 (1962), affd. 318 F. 2d 786 (10th Cir. 1963). *231 When the salary, interest and dividend income of $14,909.27 reported by the Woodhams is added to the total capital gains they reported of $3,845.30, the total amount of reported gross income is $18,754.57. [7]
*232 Respondent contends several transactions occurred in 1966 with respect to stock held by Mr. Woodham in Investments which gave rise to taxable income that was not reported in the Woodhams' joint return filed for that year.The record shows that some reference to all sales except two were made in the return. However, no reference was made in the return to the sale in March, 1966, which resulted in Mr. Woodham receiving a check on March 14, 1966, in the amount of $10,800 producing a gain of $5,400. It is respondent's position that this omission from income alone is in excess of 25 percent of the gross income stated in the Woodhams' 1966 income tax return. We agree with respondent's position. The Woodhams did not mention in any manner in their 1966 return the March 1966 sale of stock and thereby omitted from their return gross income $5,400, an amount properly includable therein in excess of 25 percent of the gross income reported in the return. Even if all of the other Investments stock transactions were considered to be reported on the Woodhams' 1966 return within the meaning of section 6501(e) (1)(A)(ii) the total omission of the March transaction is sufficient to cause the 6-year *233 statute of limitations provided for in section 6501(e) to apply. We, therefore, need not consider whether the reporting of other transactions in connection with the sale of Investments stock gave sufficient "clue" to the existence of additional income to cause section 6501(e)(1)(A)(ii) to apply. The primary contention of petitioner is that Mr. Woodham merely made a "swap" of stock of Investments for stock of "Federated" and therefore no gain should be recognized. Although petitioner does not so limit her contention, this argument could only apply to the May 1966 transaction. The record shows that in May 1966 Mr. Woodham transferred 8,922 shares of Investments stock to Federated and received a check from Federated for $53,532 which he deposited in his personal checking account. On the same day in May 1966 that he received and deposited the Federated check, he drew a check to Federated for $46,500 for the purchase of 15,500 shares of Federated stock at $3 per share. There is nothing in the record to show that petitioner's "swap" contention could apply to any transaction other than that of May 1966. Under sections 1001 and 1002 the gain realized upon the "sale or exchange" of *234 a capital asset is to be recognized unless some section of the Code provides otherwise.Therefore, even if the form of the transaction which occurred with respect to the stock owned by Mr. Woodham in Investments had been a "swap" of that stock for Federated stock, gain if any would be recognized unless some provision of the Code excluded the gain from recognition. Had the form of the transaction been a stock "swap" there might arise a question of the value of the stock received in determining the gain if any on the exchange. However, nothing in this record indicates that as of May 1966 the stock of Federated did not have a value of $3 a share. Petitioner argues that there is no recognizable gain where the transactions were merely a "swap" of stock in Investments for stock in Federated and that here such a "swap" in fact occurred even though Mr. Woodham received the proceeds of checks. Had petitioner proved that the Federated stock had a value less than $3 a share in May 1966, there would be some reason for us to consider whether in fact as well as in form Mr. Woodham received cash rather than Federated stock for 7,750 shares of his Investments stock in May 1966. See Kershaw Manufacturing Co., Inc. v. Commissioner,313 F. 2d 942, *235 footnote 5 at p. 945 (5th Cir. 1963), revg. on another issue a Memorandum Opinion of this Court. However, not only is the value of the Federated stock not shown, its value is not the basis of petitioner's argument. Petitioner cites section 311(a)(2) and section 368(a)(1)(F) to support her contention of nonrecognition of the gain. Petitioner does not inform us why she considers these sections applicable to the transaction here and we see no applicability. Petitioner makes some argument of a "swap" of property. However, under section 1031 which deals with nonrecognition of gain on exchanges of certain "like kind" properties, an exchange of stock for stock is specifically excluded from nonrecognition treatment. As an alternative argument, petitioner maintains the entire $46,500 paid by Mr. Woodham for stock of Federated in 1966 is deductible in that year as "a job protection expense." In support of this argument, petitioner cites Trent v. Commissioner,291 F.2d 669 (2d Cir. 1961), revg. 34 T.C. 910 (1960); Whipple v. Commissioner,373 U.S. 193 (1963); United States v. Generes,405 U.S. 93 (1972); Irwin v. United States,401 F. Supp. 547 (E.D. La. 1975). *236 The cases on which petitioner relies do not support her argument. The only case cited by petitioner dealing with the purchase of stock rather than sums loaned to a corporation is Irwin' v. United States,supra. In that case, as in the cases involving loans, the issue involved whether the taxpayer's loss was a business loss fully deductible or a capital loss. The claimed business loss arose not on the making of the loan or the purchase of the stock but upon the debt becoming worthless or the stock being disposed of at a loss or becoming worthless. None of the cases cited by petitioner allows a deductible business expense upon the purchase of shares of stock by an employee in a corporation in order to protect his employment. The employee has no loss until the stock is sold at a loss or becomes totally worthless. There is no evidence in this record to indicate that the stock of Federated was worthless or in fact worth less than $3 a share in 1966. In fact the record indicates that in a year subsequent to 1966 Mr. Woodham sold some of his Federated stock at an undisclosed price and that stock of a corporation named United Finance which was issued to holders of *237 Federated and Investments stock when these two corporations "merged" still had some value at the time of the trial of this case. Respondent determined that the Woodhams were liable for the 5 percent addition to tax under section 6653(a) for negligence because two of the sales of stock of Investments were not disclosed on the return filed and a third was largely omitted. See Gouldman v. Commissioner,165 F. 2d 686 (4th Cir. 1948), affg. a Memorandum Opinion of this Court. It is petitioner's position that there was no negligence on the "swap" of stock. However, no evidence has been offered to show that the Woodhams were not negligent in not at least reporting the stock transactions which were completely omitted from the return and which were in no way involved in the alleged "swap." The burden of proof of this issue is on petitioner. Estate of Ralph B. Campbell,56 T.C. 1, 14 (1971). We, therefore, uphold respondent's determination of the addition to tax for negligence because of petitioner's failure of proof. See James W. England, Jr.,34 T.C. 617, 623 (1960). Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Apparently the only way that Mr. Woodham could raise sufficient funds to purchase shares in Federated was through disposing of Investments stock to acquire Federated stock.↩
3. The May 7, 1966, sale resulted in short-term capital gain as the stock had not been held for six months. The sale of February 10, 1966, was to an unrelated third party.↩
4. Petitioner was allowed 15 days to file a written amendment to petition.No written amendment was filed and petitioner did not argue the issue of the statute of limitations on brief. However, apparently petitioner does not intend to waive or concede this issue. ↩
5. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. (b) Time Return Deemed Filed.-- (1) Early Return.--For purposes of this section, a return of tax imposed by this title, except tax imposed by chapter 3, 21, or 24, filed before the last day prescribed by law or by regulations promulgated purusuant to law for the filing thereof, shall be considered as filed on such last day.↩
6. SEC. 6501(e). Substantial Omission of Items.-- Except as otherwise provided in subsection (c)-- (1) Income Taxes.--In the case of any tax imposed by subtitle A-- (A) General Rule.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *↩
7. Respondent on brief states that the Woodhams' reported gross income is $18,154.57 but does not state how he arrives at this figure. From his argument, he apparently considers the omitted gross income to be the omitted sales price of the Investments stock and not merely the omitted gain. However, we have considered that the omitted income where capital gains are involved is not the gross sales price but is the entire gain. For years prior to 1951 we held only 50 percent of long-term capital gain to be "omitted" income, but for years after 1951 have held the entire gain to be "omitted income78 since for 1951 and subsequent years the Code has provided for a "deduction" of 50 percent of long-term capital gain. See Elliott J. Roschuni,44 T.C. 80, 82↩ (1965). Respondent has not argued that the gross income "stated" in the return where capital gains are involved includes the total sales price reported. In view of our holding as to "omitted income" in case of capital gains, it follows that reported gross income includes the total capital gain reported but not the total sales price.